JOHN R. EMERY, FREDERIC W. STEVENS, EUGENE STEVENSON, LINDLEY M. GARRISON, EDMUND B. LEAMING, JAMES E. HOWELL AND VIVIAN M. LEWIS, VICE-CHANCELLORS.

----

THE TRENTON TRUST AND SAFE DEPOSIT COMPANY et al.

*v.*

FITZGIBBON & CRISP CARRIAGE AND WAGON COMPANY.

[Decided October 18th, 1912.]

1. The *time* of sale mentioned in the amendment to the act relative to the sale of lands, approved March 19th, 1912 (*P. L. 1912 p. 131*), is referable to a *day*, that is, *the day of sale;* therefore, it is as though the act read "the last publication (of the notice of sale) to be not more than seven *days* prior to the *day appointed for selling*," &c.

1

2. Under the amendment to the act relative to the sale of lands, approved March 19th, 1912 (*P. L. 1912 p. 131*), the last advertisement of a sale of real estate must be made in two newspapers published and circulated not later than the calendar day next preceding the time (day) appointed for selling the same; and a sale made on the day of the last publication of the notice is invalid and will be set aside, if that publication has to be relied upon as one of the advertisements required by law. *Early v. Doe, 16 How.* (*U. S.*) *610; 14 L. Ed. 1079,* distinguished.

On application for confirmation of sale.

*Mr. Charles E. Gummere* and *Mr. W. Holt Apgar,* for the application.

*Messrs. Wilson & Carr, contra.*

WALKER, CHANCELLOR.

The receiver of the defendant, an insolvent corporation, reports the sale of lands and premises (including personal property), subject to certain liens, and his counsel moving for the confirmation of the sale, is opposed by counsel for a stockholder and creditor.

The question pressing for solution is this: May a sale of real estate be validly made under the amendment to the act relative to the sale of lands, approved March 19th, 1912 (*P. L. 1912 p. 131*), by publishing the last notice of sale in newspapers published and circulated on the day the sale takes place?

Sales of land were formerly conducted under the act of June 14th, 1898. *Comp. Stat. p. 4667 § 1.* So much of that act as is pertinent to the present inquiry directed publication to be made "at least four weeks successively, once a week, next preceding the time appointed for selling the same," and it was held in *Parsons v. Lanning, 27 N. J. Eq.* (*12 C. E. Gr.*) *70,* to require four whole weeks between the first insertion in the newspaper and the day fixed for sale. The only bearing that case has upon the one in hand, as I view it, is to establish the fact that "weeks" are the periodical units which must be observed in the matter of advertising—that is, that the advertisement must be made four whole weeks next preceding the day appointed for the sale,

and that the day of sale may not be within the last week. This case was followed in the supreme court in *State* v. *Elizabeth, 41 N. J. Law (12 Vr.)* 517.

The present statute (*P. L. 1912 p. 131*) provides that the advertisement of sale shall be published four times in two newspapers at least once a week during four consecutive calendar weeks, "the last publication to be not more than seven days prior to the time appointed for selling the same."

Here, it must be observed, "days" are the periodical units of time within which the last advertisement is to be inserted. That is to say, it may be inserted one day prior to the time appointed for sale, or two days, &c. It is as though the act read "the last publication to be not more than one, two, three, four, five, six or seven days prior to the time appointed for selling the same." Now, the time appointed for selling must be "between the hours of twelve and five in the afternoon," as provided in the act. If, therefore, a sale be advertised to take place

"on Friday the twenty-third day of August, A. D. one thousand nine hundred and twelve, between the hours of twelve and five o'clock in the afternoon of said day, that is to say, two o'clock P. M.,"

as in the case at bar, the statutory direction that the last publication shall not be more than seven *days* prior to the time appointed for selling, is not complied with by publication on the day of sale, even though published in newspapers which are circulated at seven o'clock in the morning of that day, which was done in this case, as is made to appear by the proofs submitted on this motion.

The *time* of sale is necessarily referable to a *day*—that is, the *day of sale:* therefore, it is as though the act read "the last publication to be not more than seven days prior to the *day* appointed for selling," &c.

In *Tappan* v. *Dayton, 51 N. J. Eq.* (6 *Dick.*) 260, the confirmation of a sale of lands by the Middlesex county orphans court was set aside because the last publication of the notice of sale was made more than one week prior to the time appointed for the sale; the statute then in force requiring the notice of sale

to be published at least four weeks successively, once a week, next preceding the time appointed for selling. In that case Chancellor McGill, sitting as ordinary (at *p. 265*), said:

"The failure to publish the notice between February 2d and February 10th, a period of eight days immediately preceding the time appointed for the sale, shows an inexcusable non-compliance with the statute, in that for more than a week next preceding the time appointed for the sale, notice of it was not published in that paper. The purpose of the requirement that the publication should fit closely upon the sale is obviously to keep freshly in the public mind the pendency of the sale, and the mischief of the omission to publish within the last week may be twofold, in permitting the sale to be lost sight of and, possibly, in impressing intending purchasers with the belief that it has been abandoned. However this may be, the courts hold that strict compliance with the requirements of the statute is essential to the validity of the sale."

The sale in this case must be set aside because the last publication of the notice of sale was made less than one day prior to the time appointed for the sale.

While the policy of the law doubtless is that the publication should fit closely upon the sale, it should, nevertheless, not fit too closely, for, while an omission to publish within the last week may permit the sale to be lost sight of, or may impress intending purchasers with the belief that it has been abandoned, on the other hand, if the last advertisement, which may be the only one seen by the intending purchaser, who would be a bidder at the sale, if seen by him only in the morning paper at his breakfast table, may come too late to permit him to arrange to be a bidder at the sale to take place but a few hours afterwards. Such short notice would hardly afford anyone time to inspect the property, examine the title and make his financial arrangements to become a purchaser. Each publication must be intended by the legislature to have potency, and if it were intended that the last publication could be made on the day of sale the act would doubtless have said so in words that could not have been misunderstood. Such a radical departure as is here con-

tended for should not be made on any doubtful construction of the statute.

If my interpretation of the act be correct, then all sales advertised as late as the calendar day preceding the sale will be safely made; but if I held that the last publication might be made on the day of sale, then the legality of sales would be in doubt, unless and until the court of errors and appeals upheld that view. If the publication may be made upon the day of sale, it may be made, I presume, at any time before the sale takes place, say one hour, or a less period.

Before the passage of the act of March 19th, 1912, it had become the settled policy of the state, in the matter of advertising these judicial sales, to have the last advertisement appear some time during one week next preceding the time appointed for the sale, and, when the legislature of 1912 passed the amendment referred to, it is presumed that the legislators had in mind that fact; and, further, I think, when they provided that the last publication should be not more than seven days prior to the sale, they meant it should be not more than one week prior to the sale, for they named one week, in other words, and said the publication should be prior to the sale.

The case of *Early* v. *Doe, 16 How.* (*U. S.*) *610; 14 L. Ed. 1079,* is relied on by counsel for the receiver as an authority for publishing the last notice of a sale under the statute on the day of sale; but, as I read the opinion, it is rather an authority for the objector. In that case the United States supreme court (at *p. 616*) said:

"The language of the statute regulating the notice to be given, is in these words: 'That public notice of the time and place of the sale of all real property for taxes due the corporation of the city of Washington, shall be given hereafter, by advertisement, inserted in some newspaper published in said city, once in each week, for at least twelve successive weeks.' Now, the first week following the date of the advertisement expired with the next Friday, the 10th of November, and if the computation is carried out, it will be found that the twelfth week expired on the 17th of November. But the sale was made two days before, on

the 15th of November, the last insertion of the notice being on the day of sale.

"So there were eleven insertions of the notice in the newspapers in different weeks (making, with the first, twelve) after the expiration of the week from the first insertion, and the point to be settled is, whether the statute means that twelve insertions in successive weeks is sufficient notice, without respect to the number of days in twelve weeks. We do not doubt if the statute had been 'once in each week for twelve successive weeks,' a previous notice of the particular day of sale having been given to the owner of the property, that it might very well be concluded, that twelve notices in different successive weeks, though the last insertion of the notice for sale was on the day of sale, was sufficient. But when the legislature has used the words, for at least twelve successive weeks, we cannot doubt that the words, at least, as they would do in common parlance, mean a duration of the time that there is in twelve successive weeks, or eighty-four days. Every statute must be construed from the words in it, and that construction is to be preferred which gives to all of them an operative meaning. Our construction of the statute under review gives to every word its meaning. The other leaves out of consideration the words 'for at least,' which means a space of time comprehended within twelve successive weeks, or eighty-four days. The preposition for, means of itself duration when it is put in connection with time, and as all of us use it in that way, in our every-day conversation, it cannot be presumed that the legislature, in making this statute, did not mean to use it in the same way. Twelve successive weeks is as definite a designation of time, according to our division of it, as can be made. When we say that anything may be done in twelve weeks, or that it shall not be done for twelve weeks, after the happening of a fact which is to precede it, we mean that it may be done in twelve weeks, or eighty-four days, or as the case may be; that it shall not be done before. The notice for sale, in this instance, was the fact which was to precede the time for sale, and that is neither qualified nor in any way lessened by the words 'once a week,' which precede in this statute those which follow them, 'for at least twelve weeks.'

"The construction of the statute will be recognized to be in harmony with that policy of the law which experience has established to protect the ownership of property from divestiture by statutory sales, where there has not been a substantial compliance with the law by which a public officer is empowered to sell it.

"Property is liable to be sold on account of an undischarged obligation of the owner of it to the public or to his creditors. But it can only be done in either case where there has been a substantial compliance with the prerequisites of the sale, as those are fixed by law. Any assumption by the officer appointed to make the sale, or disregard of them, the law discountenances. He may not do anything of himself, and must do all as he is directed by the law under which he acts. He may not, by any misconstruction of it, anticipate the time for sale within which the owner of the property may prevent a sale of it, by paying the demand against him, and the expenses which may have been incurred from his not having done so before. This the law always presumes that the owner may do until the sale has been made. He may arrest the uplifted hammer of the auctioneer when the cry for sale is made, if it be done before a *bona fide* bid has been made. * * *

"There is a difference, it is true, in the strictness required in a tax sale, and that of a sale made under judgment and execution; but, in both, the same rule applies as to the full notice of time which the law requires to be given for the sale."

I will now point out wherein I think *Early* v. *Doe* is not an authority for the receiver but for the objector. In that case it was said that if the statute had read "once in each week for twelve successive weeks," it might very well be concluded that twelve notices in different successive weeks, if the last insertion were on the day of sale, would be sufficient. Observe, now, that the statute was not so written and the language of the opinion is only that the publication *might* have lawfully been made on the day of sale if the statute was written as presupposed. That such observation of the judge who wrote the opinion in *Early* v. *Doe* has, by force of that case, no application to the one under consideration, appears further on in the judge's assertion that every

statute must be construed by the words in it, and that that construction is to be preferred which gives to all of them an operative meaning, and that the court's construction of the statute there under review gave to every word its meaning; that the construction contended for left out of consideration the words "for at least."

Now, by the application of these rules I must ascribe a meaning to the words "days prior"—that is, days prior to the sale, found in our statute, and it may be *one day,* because *day* is the unit of time mentioned in and contemplated by the statute, properly written in the plural, *days.*

If I adopted the construction contended for on behalf of the receiver, I would have to excise from the statute the words "days," because, if the last publication of notice of sale should be made on the day of sale, then it would be some *hours,* but not *days,* or even a *day* prior to the sale. As already seen, the last advertisement, as I view it, may be on some day (not more than *seven*) before the sale, but cannot be an *hour* or any number of *hours* before the sale on the day of the sale. This, in my judgment, is the only way in which the words "prior" and "days" (which latter includes "day") may be read together and given the full force and effect which the legislature intended should be given to them.

I am constrained to the conclusion that the sale should be set aside.